# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Bonnie Richardson,

                          Plaintiff,

                                                  Civ. No. 05-2308 (RHK/AJB)

v.                                           **MEMORANDUM OPINION AND ORDER**

Intown Suites Burnsville, L.P.,

                          Defendant.

Sidney Crow,

                          Plaintiff,

                                                  Civ. No. 05-2307 (RHK/AJB)

v.                                           **MEMORANDUM OPINION AND ORDER**

Intown Suites Burnsville, L.P.,

                          Defendant.

Corey L. Gordon and Allan Shapiro, Shapiro Gordon, LLC, Minneapolis, MN, for Plaintiffs.

Erica Gutmann Strohl, Michael D. Hutchens, and Jennifer E. Ampulski, Meagher & Geer, P.L.L.P., Minneapolis, MN, for Defendant.

      On September 30, 2005, Plaintiffs Bonnie Richardson and Sidney Crow

(collectively "Plaintiffs") commenced these actions[1] against Defendant Intown Suites

---

[1] Richardson and Crow have filed two separate lawsuits arising from the same set of facts. For the purposes of this Order, there is no difference between the two actions.

Burnsville, L.P. ("Intown")[2], claiming injuries from carbon monoxide poisoning while staying in a room at Intown. Plaintiffs served their Complaints on Intown in October 2005, but Intown did not answer or otherwise respond.

On November 2, 2005, having received no answer from Intown, Plaintiffs obtained entries of default against Intown pursuant to Federal Rule of Civil Procedure 55(a). (Richardson Doc. No. 7; Crow Doc. No. 7.) On January 30, 2006, Plaintiffs filed Motions for Default Judgment pursuant to Rule 55(b)(2), seeking over $2 million in damages. (Richardson Doc. No. 27; Crow Doc. No. 19.) On January 31, 2006, the Court issued a Notice of Hearing on Plaintiffs' Motions for Default Judgment, setting the hearing for February 2, 2006. (Richardson Doc. No. 29; Crow Doc. No. 20.) At the February 2 hearing, Plaintiffs' counsel appeared and, as expected, there was no appearance for Intown. Upon questioning from the Court at the hearing, Plaintiffs' counsel disclosed that they had not served Intown with their Motions for Default Judgment.[3] Therefore, the Court directed them to serve Intown with the relevant motion papers, continued the Motions for Default Judgment, and set a new hearing date for February 17, 2006. (Richardson Doc. No. 32; Crow Doc. No. 23.)

---

[2]Plaintiffs sued Intown Suites Burnsville, L.P. Three days after Plaintiffs brought suit against that entity, it was dissolved; its successor corporation is Intown Suites Burnsville, L.L.C., which Plaintiffs concede is "the proper defendant." (Mem. in Opp'n at 1 n.1.)

[3]The Court notes that Plaintiffs were under no legal obligation to serve Intown with the motion papers prior to the February 2, 2006 hearing. See Rule 55(b)(2). Furthermore, Plaintiffs were ultimately required to expend considerable effort to effectuate service of the motion papers due to a corporate reorganization affecting Intown that took place within days of the commencement of this action. (See supra n.2; 2/10/2006 Gordon Aff.)

Plaintiffs successfully served Intown with the motion papers and, on February 15, 2006, Intown obtained legal representation and made appearances in these actions. (Richardson Doc. No. 45; Crow Doc. No. 29.) By stipulation of the parties, the February 17 hearing date was postponed, and Intown filed Motions to Vacate the Entries of Default and Answers shortly thereafter (on February 21 and 22, respectively). (Richardson Doc. Nos. 47-52; Crow Doc. No. 30-35.) Those Motions to Vacate the Entries of Default are now before the Court.

In an effort to explain its failure to answer the Complaints or to otherwise appear in these actions, Intown has submitted an affidavit stating that its Associate General Counsel, Michael Weinstein, received the Summonses and Complaints from Plaintiffs on October 6, 2005, and attempted to fax them to Intown's insurance agent, Diane Case, for handling on October 11, 2005. (Weinstein Aff. ¶ 6.) It was "his standard procedure to fax any claim against Intown Suites that [he] receive[d] to Intown Suites' insurance agent." (Id. ¶ 7.) However, according to Weinstein, unbeknownst to him at the time, he "incorrectly entered the agent's telephone number rather than [the agent's] facsimile number and therefore the documents were never transferred to the agent."[4] (Id. ¶ 6.) In Weinstein's experience with agent Case, once a claim was initiated, she would only call him if she needed further information or action from him. (Weinstein Supl. Aff. ¶ 4.) Therefore, believing

---

[4]Weinstein has been Associate General Counsel for Intown Suites Management, Inc. since August 2002. (Weinstein Supl. Aff. ¶ 1.) He avers that "[i]n handling approximately 150 claims, [he has] never had an incident similar to what arose here, wherein [he] faxed a claim but it was not received by the agent." (Id. ¶ 3.)

(incorrectly) that he had successfully faxed the Complaints to Case, it did not concern Weinstein that he did not hear from Case; rather, he assumed Case "was handling the claim, or had settled the claim and did not hire defense counsel." (Id.)

Plaintiffs argue that they are entitled to default judgment in their favor due mainly to Intown's lack of a meritorious defense to the actions. Therefore, Plaintiffs contend that Intown's Motions to Vacate should be denied and default judgment should be entered in their favor. For the reasons that follow, the Court determines that the Clerk's entries of default will be vacated, contingent upon Intown's payment to Plaintiffs' counsel of their reasonable costs and attorneys' fees incurred as a result of the default.

Federal Rule of Civil Procedure 55(c) provides that the Court may set aside an entry of default "[f]or good cause shown."[5] This is a less stringent standard than that required to set aside a judgment of default under Rule 60(b), though "the same factors are typically relevant in deciding whether to set aside entries of default and default judgments." Johnson v. Dayton Elec. Mfg. Co., 140 F.3d 781, 783 (8th Cir. 1998). It is particularly appropriate to apply this less stringent standard in the instant case, as the reason for the differentiation between the standards — that "it is likely that a party who promptly attacks an entry of default, rather than waiting for a grant of a default judgment, was guilty of an oversight and wishes to defend the case on the merits," Johnson, 140 F.3d at 784 — is present in the

---

[5]Rule 55(c) provides: "For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)."

instant case; Intown made an appearance just days after learning of the entry of default against it.

In assessing whether there is good cause to set aside an entry of default, the Court looks at "[1] whether the conduct of the defaulting party was blameworthy or culpable, [2] whether the defaulting party has a meritorious defense, and [3] whether the other party would be prejudiced if the default were excused." Johnson, 140 F.3d at 784. In doing so, the Court "should take account of all relevant circumstances surrounding the party's omission." Union Pacific R.R. Co. v. Progress Rail Services, 256 F.3d 781, 782 (8th Cir. 2001) (internal quotation omitted). "The inquiry is essentially an equitable one, and the district court is required to engage in a careful balancing" of the above considerations. Id. The Court must also keep in mind that "[t]he entry of default judgment is not favored by the law and should be a rare judicial act." Jones Truck Lines, Inc. v. Fosters Truck & Equip. Sales, Inc., 63 F.3d 685, 688 (8th Cir. 1995) (internal quotations and citations omitted).

Regarding the first factor to be considered, the Eighth Circuit has "consistently sought to distinguish between contumacious or intentional delay or disregard for deadlines and procedural rules, and a marginal failure to meet pleading or other deadlines." Johnson, 140 F.3d at 784. Thus, default judgment is not to be entered by a district court "for a marginal failure to comply with the time requirements." Jones Truck Lines, Inc., 63 F.3d at 688. The Court determines that this factor weighs in favor of granting Intown's Motions to Vacate the Entries of Default. Intown failed to answer or appear in these actions due to neglect and poor communication in its associate general counsel's office. Upon learning

of the entries of default against it, however, Intown promptly filed appearances, Answers, and the instant Motions. Thus, just over five months passed between Plaintiffs' service of their Complaints on Intown, and Intown's appearance in the actions. The Eighth Circuit has routinely held (in some cases, under the more stringent Rule 60(b) standard) that a defendant should have the opportunity to defend an action on the merits in circumstances very similar to those present here. See, e.g., Union Pacific Railroad Co., 256 F.3d 781 (reversing district court's denial of Rule 60(b) motion where the defendant responded to default judgment against it "less than 6 months" after the plaintiff's complaint had been filed, and had not filed an answer due to a "recording error by its legal department"); Johnson, 140 F.3d 781 (setting aside of entry of default under Rule 55(c) was proper where the defendant responded to suit 5 months after it was initiated, and had not responded earlier due to "poor communication"); Hoover v. Valley West D M, 823 F.2d 227, 230 (8th Cir. 1987) (affirming district court's decision to set aside default judgment where defendant's attorney "did not learn of the litigation until the default judgment had been entered" due to "a lack of communication").

      The Court notes that Intown's actions with respect to the Complaints fall far short of commendable. However, it also recognizes that Intown ultimately "committed a single, simple error [that is: not confirming the successful transmission of a fax to its insurance agent] that left it unaware of [its failure to appear in the instant] lawsuit[s]. The error did not result from a mistake of law, nor did [Intown] act negligently over a long period of time despite receiving warnings about its omission." Union Pacific R.R. Co., 256 F.3d at 783

(emphasis added). While Plaintiffs take issue with Intown's allegedly lackadaisical handling (at times through its insurance company) of Plaintiffs' requests that it pay their medical bills <u>before Plaintiffs filed the instant suits</u>, those actions are not relevant to the Rule 55(c) inquiry[6]; Plaintiffs have not presented any evidence that Intown <u>knew of the entries of default</u> prior to February 2006 and failed to act on them. Accordingly, the Court determines that its consideration of Intown's actions in failing to timely respond to these actions weighs in favor of granting the Motions to Vacate.

The Court also determines that Intown has satisfied — albeit marginally — the meritorious defense factor, as it notes that this "component of the test for setting aside a default does not go so far as to require that the movant demonstrate a likelihood of success on the merits. Rather, a party's averments need only plausibly suggest the existence of facts which, if proven at trial, would constitute a cognizable defense." <u>Coon v. Grenier</u>, 867 F.2d 73, 77 (1st Cir. 1989) (internal quotation and citations omitted). According to Intown, its meritorious defenses include: (1) "there is no evidence that [the] carbon monoxide release was foreseeable because [Intown] had its boiler inspected in accordance with state code" prior to Plaintiffs' exposure to carbon monoxide (Reply Mem. at 6); (2) the carbon monoxide leak could have been caused by a third party (<u>id.</u>); and (3) Plaintiffs may not have been guests to whom Intown owed a duty (<u>id.</u>). For the limited purposes of this Rule 55(c) inquiry, the Court deems Intown's proffer on this element sufficient.

---

[6]In fact, Plaintiffs themselves recognize that Intown's "pre-commencement activity, of course, is only a factual backdrop to the actions it took once the complaint[s] had been served." (Mem. in Opp'n at 11.)

Finally, the Court determines that Plaintiffs have failed to establish that the delay in Intown's appearance in this matter would undermine Plaintiffs' ability to advance their claims. And "[t]he fact that [Plaintiffs'] rights would not be affected weighs heavily in favor of [Intown's]" Motions to Vacate. Union Pacific R.R. Co., 256 F.3d at 783. Plaintiffs are "unaware of any . . . material change in circumstances through loss of evidence or witnesses or otherwise" stemming from Intown's delay in answering or otherwise appearing in these actions.[7] (Mem. in Opp'n at 29.) Plaintiffs concede that mere delay (where, as here, it is not significant in length) is insufficient to establish prejudice for purposes of this inquiry. (Id.) Furthermore, Plaintiffs assert that any prejudice they have suffered due to Intown's delay "could be easily cured by ordering [Intown] to pay those costs and attorneys fees incurred as a result of [its] default." (Id. at 30.) Accordingly, the Court determines that, having weighed all of the factors set out by the Eighth Circuit as relevant to the "good cause" inquiry, Intown's Motions to Vacate Clerk's Entries of Default will be granted. However, the vacation of the entries of default will be conditioned upon the immediate payment by Intown to Plaintiffs' counsel of $5,000; that sum is based upon the Court's review of the proceedings following the entries of default and will be reviewed after receipt of the appropriate submissions of the parties and adjusted accordingly.

## CONCLUSION

---

[7]Plaintiffs suggest that, in the event the entries of default are vacated, and Plaintiffs subsequently discover that "loss of evidence occurred during the delay, [Plaintiffs] would presumably be precluded from retroactively raising such prejudice." (Mem. in Opp'n at 4-5.) The Court notes, however, that any such loss of evidence could be dealt with at trial.

Based on the foregoing, and all the files, records and proceedings herein **IT IS ORDERED** that:

1) Intown's Motions to Vacate Clerk's Entry of Default (Richardson Doc. No. 47; Crow Doc. No. 30) are **GRANTED CONDITIONED UPON** Intown's payment to Plaintiffs' counsel of $5,000, representing the Court's preliminary establishment of the reasonable costs and attorneys' fees Plaintiffs' counsel incurred as a result of Intown's default; such payment must be made to Plaintiffs' counsel by **March 29, 2006**;

2) Upon the filing, **on or before March 29, 2006**, of an affidavit from Intown's counsel averring that payment of the $5,000 has been effectuated, the Clerk's Entries of Default (Richardson Doc. No. 7; Crow Doc. No. 7) **WILL BE VACATED**;

3) Plaintiffs' counsel shall submit (a) supportive documents for the $5,000 award, or (b) supportive documents for an increased sum representing the costs and fees incurred as a result of Intown's default, by March 29, 2006;

4) Intown may submit an opposition to the $5,000 award, and/or any increased award sought by Plaintiffs, by April 6, 2006;

5) Intown's Motions to Continue Damages Hearing and for a Determination of Damages by an Evidentiary Hearing or Jury Trial (Richardson Doc. No. 54; Crow Doc. No. 42) are **DENIED AS MOOT**;

6) Plaintiffs' Motions for Default Judgment (Richardson Doc. Nos. 4, 27, 31; Crow Doc. Nos. 4, 19, 22) are **DENIED AS MOOT**;

7) Plaintiffs' Motions to Strike the Answer to the Complaint (Richardson Doc. No. 65; Crow Doc. No. 49) are **DENIED** and Intown's Answers are deemed filed and served **as of the date of this Order**; and

8) The parties shall contact Magistrate Judge Boylan and request an expedited Rule 16 Pretrial Conference so that discovery may begin promptly.

Dated: March 22, 2006                              s/Richard H. Kyle
                                                   RICHARD H. KYLE
                                                   United States District Judge